UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

| | | |
|---|---|---|
| In re: | : | Case No.:  18-31337 (AMN) |
| NEIL E. RANCIATO AND | : | |
| KRISTIN H. RANCIATO, | : | Chapter 7 |
| *Debtors* | : | |
| | : | |
| | : | |
| MADELINE REYES, | : | Adv. Pro. No. 18-3031 (AMN) |
| *f/k/a* MADELINE WALKER | | |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| NEIL RANCIATO, | : | |
| *d/b/a* INDEMNITY FIRST | : | |
| *Defendant* | : | |
| | : | |
| | : | Re:  AP-ECF No. 118[1] |

## MEMORANDUM OF DECISION AND ORDER
## GRANTING MOTION FOR DEFAULT JUDGMENT IN PART

Before the court is plaintiff Madeline Reyes's ("Ms. Reyes" or "plaintiff") motion for default judgment against the defendant and debtor Neil Ranciato ("Debtor").   The plaintiff seeks a judgment determining Ms. Reyes's pre-petition claims against the Debtor are non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6) (the "Default Judgment Motion").[2]  AP-ECF No. 118.  The court entered a default against the Debtor for failing to comply with discovery orders pursuant to Fed.R.Bankr.P. 7037 and Fed.R.Civ.P. 37(b)(2)(a)(ii).  AP-ECF No. 101.

---

[1]    Citations to the docket of the Chapter 7 case of Neil E. Ranciato, case number 18-31337, are noted by "ECF No."  Citations to the docket of this adversary proceeding number 18-3031 are noted by "AP-ECF No."

[2]    The provisions of Title 11, United States Code, comprise the Bankruptcy Code.  Unless otherwise noted, references to statutes are to the Bankruptcy Code.

While the plaintiff asserts substantive claims including non-bankruptcy state law claims against the Debtor, those claims have not been reduced to a judgment and are unliquidated. Nonetheless, the court is able to determine whether the Debtor's conduct satisfies the elements of Bankruptcy Code § 523, leaving the determination of damages to another tribunal. After considering the well-plead allegations of the complaint, the Debtor's answer admitting some of the allegations, and affidavits from Ms. Reyes, Todd Moler, and Ms. Reyes's counsel, I conclude a default judgment should enter against the Debtor determining the plaintiff's claims against the Debtor are non-dischargeable pursuant to Bankruptcy Code §§ 523(a)(2)(A) and (a)(4).

## I.    JURISDICTION

Jurisdiction arises pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b), and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I) (determinations as to the dischargeability of particular debts). Pursuant to 28 U.S.C. § 1409(a), venue is in this District.

## II.    RELEVANT PROCEDURAL HISTORY

### *Debtor's Bankruptcy Case*

The Debtor, along with his wife and co-debtor, Kristin H. Ranciato, filed a voluntary Chapter 7 petition on August 10, 2021 (the "Petition Date"). ECF No. 1. In the petition, the Debtor indicated he used two names to conduct business including Indemnity First and USA Water & Fire. ECF No. 1, p. 2, 8. The Debtor also identified a business name of Omni General Contractors, LLC. ECF No. 1, p. 2, 8.

In his Statement of Financial Affairs, the Debtor disclosed he was a party to a tort lawsuit entitled *Madeline Reyes v. Neil Ranciato*, pending in the Connecticut Superior Court bearing docket number NNH-CV-18-6081458-S (the "State Court Case").  ECF No. 1, p. 65.  Despite disclosing the State Court Case, the Debtor failed to list Ms. Reyes as a creditor on his schedules.  *See*, ECF No. 1, pp. 23 – 46.  Instead, in Schedule E/F: Creditors Who Have Unsecured Claims, the Debtor listed William Sasso, Esq. as a non-contingent, non-disputed, unsecured creditor holding a claim of unknown value.  ECF No. 1, p. 43.  Attorney Sasso served as Ms. Reyes's counsel in the State Court Case.[3]  As of the Petition Date, the State Court Case had not been reduced to a judgment.

On May 28, 2019, the Chapter 7 Trustee filed a report of no distribution indicating a lack of assets available for distribution.  ECF No. 62.  Thereafter, on June 5, 2019, the Debtor received a Chapter 7 Discharge.  ECF No. 65.

### *Adversary Proceeding*

Prior to entry of the Debtor's discharge, on November 18, 2018, Ms. Reyes commenced this adversary proceeding by filing a complaint[4] seeking a determination that her state court causes of action against the Debtor were non-dischargeable pursuant to Bankruptcy Code §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6) (the "Complaint").  AP-ECF No. 1.  The Complaint is organized around four counts each alleging a state law cause of action, and, each asserting there are four bases for a determination of non-

---

[3]    The court takes judicial notice of the docket of State Court Case pursuant to Fed.R.Evid. 201.  The State Court Case docket is publicly available at:
http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=NNHCV186081458S.

[4]    The complaint contains only four counts.  The last count is labelled as "count five," but the complaint fails to include a separate count four.  For purposes of clarity, the court will refer to Ms. Reyes's "count five" for a breach of a fiduciary duty, as count four.  AP-ECF No. 1.

dischargeability. The following chart summarizes the court's understanding of the counts in Ms. Reyes's complaint.

| Count | State Law Cause of Action | Asserted Basis for Non-Dischargeability |
|-------|---------------------------|------------------------------------------|
| 1 | Violation of Connecticut Unfair Trade Practices Act – Conn.Gen.Stat. § 42-110g | Bankruptcy Code §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6) |
| 2 | Conversion | Bankruptcy Code §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6) |
| 3 | Statutory Theft – Conn.Gen.Stat. § 52-564 | Bankruptcy Code §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6) |
| 4 | Breach of Fiduciary Duty | Bankruptcy Code §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6) |

The Debtor filed a notice of appearance as a *pro se* litigant and answered the Complaint, denying the majority of the substantive allegations.[5] AP-ECF No. 38. Despite appearing, the Debtor failed to participate in discovery and after several hearings, the court entered a default against the Debtor for failing to comply with discovery orders pursuant to Fed.R.Bankr.P. 7037 and Fed.R.Civ.P. 37(b)(2)(a)(ii). AP-ECF No. 101. The court also imposed a monetary sanction of $1,380.00 against the Debtor for his violation of discovery orders. AP-ECF No. 108.

### *Default Judgment Motion*

On March 1, 2021, the plaintiff moved for entry of a default judgment pursuant to Fed.R.Civ.P. 55(b)(2), made applicable to this proceeding pursuant to Fed.R.Bankr.P.

---

[5]    Prior to answering the Complaint, a default entered against the Debtor but the initial default was later reopened upon the Debtor's motion. See, AP-ECF Nos. 13, 14, 16, 17, 28. As noted, the court later entered a default against the Debtor for failing to comply with discovery orders pursuant to Fed.R.Bankr.P. 7037 and Fed.R.Civ.P. 37(b)(2)(a)(ii). AP-ECF No. 101.

7055.  AP-ECF No. 118.  The plaintiff submitted evidence to support her motion in the form of affidavits from herself, Todd Moler, and Attorney Sasso.  AP-ECF Nos. 119, 120, 121.  The plaintiff also asserted the Debtor engaged in a scheme to defraud her and offered as evidence information related to the Connecticut Insurance Commissioner's revocation of the Debtor's public adjuster license.  This revocation was based upon a complaint by the Connecticut Insurance Department against the Debtor and Indemnity First for violations of Connecticut law.[6]  The court affords no weight to this information because the events involving Ms. Reyes are not the subject of the administrative action.

In the Default Judgment Motion, the plaintiff sought a hearing, if necessary, and entry of a default judgment finding the Debtor's conduct violated §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6).  AP-ECF No. 118, p. 3-4.  Additionally, the plaintiff requested the court "find money damages in favor of the Plaintiff in the amounts, or in greater amounts, than set forth in affidavits filed simultaneously with this motion."  AP-ECF No. 118, p. 4.  The Debtor was served with the Default Judgment Motion but failed to respond.

III.    **FACTUAL BACKGROUND AND FINDINGS**

Based upon the filed affidavits, admitted allegations, and any well-pled allegations taken as true, I find the following facts.  *See*, *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012)("[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."); *see also, Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)("the court should have accepted as true all of the factual

---

[6]    Record of the Fraud and Investigations Unit of the Connecticut Insurance Department are publicly available online at https://www.catalog.state.ct.us/cid/portalApps/EnforcementAction.aspx.

allegations of the complaint, except those relating to damages.  [The plaintiff] was also entitled to all reasonable inferences from the evidence offered.")(internal citations omitted).

In 2016, the plaintiff owned and resided at property located at 450 Second Avenue, West Haven, Connecticut (the "Residence").  AP-ECF No. 119, ¶ 1.  In August of 2017, a water pipe burst on the Residence's first level causing water to seep through the floor and onto the boiler located in the basement (the "First Burst Pipe").  AP-ECF No. 119, ¶ 2. The water damaged the boiler rendering it inoperable.  Thereafter, on August 18, 2017, Ms. Reyes retained the Debtor as an insurance adjuster to represent her in connection with a homeowners' insurance claim against Allstate for damages stemming from the First Burst Pipe.  AP-ECF Nos. 1, ¶ 11; 38, ¶ 11.  The damages were so extensive the Residence could not be occupied during the repairs.  AP-ECF Nos. 1, ¶ 17; 38, ¶ 17.

In addition to insurance claim services, the Debtor promised the plaintiff he could perform or hire and coordinate all the repair work needed for the Residence.  AP-ECF Nos. 1, ¶¶ 10, 14; 119, ¶ 3.  Ms. Reyes accepted the Debtor's offer to perform or coordinate the repair work.  AP-ECF No. 119, ¶¶ 3, 5.  The allegations of the Complaint sufficiently plead, for purposes of this default judgment, the Debtor knew at the time he offered to perform the repair work and began performing that:

1) it was a violation of the Regulations of Connecticut State Agencies § 38A-788-3 for him to act as a public adjuster and as the home contractor;
2) he did not possess a home improvement contractor's license; and
3) even if he did have a license, he failed to provide Ms. Reyes with a written contract detailing the work to be completed pursuant to Conn. Gen. Stat. §§ 20-429.
AP-ECF Nos. 1, ¶¶ 18, 20, 22, 23, 24; 38, ¶ 18.

The Debtor promised Ms. Reyes he would "protect, monitor, and secure" the Residence. AP-ECF Nos. 1, ¶ 18; 38, ¶ 18. Ms. Reyes gave the Residence's keys to the Debtor while she and her children resided with relatives or in temporary housing during the repairs. AP-ECF Nos. 1, ¶ 17; 38, ¶ 17; 119, ¶ 3.

The following table lists the checks issued by Allstate to the plaintiff and Indemnity First (one of the names the Debtor used to conduct business) from the First Burst Pipe insurance claim:

| Date | Check No. | Amount |
|------|-----------|--------|
| 9/8/2017 | 555021197 | $1,100.00 |
| 9/13/2017 | 145639330 | $15,230.85 |
| 9/13/2017 | 145639329 | $16,966.00 |
| 9/29/2017 | 175625043 | $2,003.72 |
| 10/6/2017 | 555021199 | $1,523.08 |
| 12/20/2017 | 151780793 | $4,804.09 |
| | Total | $41,627.74 |

AP-ECF No. 119, p. 3, 20-25.

Ms. Reyes endorsed the checks and delivered them to the Debtor. AP-ECF No. 119, p. 20-25. The Debtor converted several of the checks to cash by depositing them with M&M Pawn and Check Cashing. AP-ECF No. 119, p. 21-24. The Debtor never accounted for how he used the funds. AP-ECF No. 119, ¶ 17-18. The Debtor failed to complete the promised repairs. AP-ECF No. 119, ¶ 6.

At some point during the winter of 2018, when repairs from the First Burst Pipe were still ongoing, a number of hot water heating pipes burst on the Residence's first and second floors leaking water throughout the Residence (the "Second Burst Pipe"). AP-ECF No. 119, ¶ 7. Ms. Reyes was unaware of the Second Burst Pipe until approximately April of 2018 when she visited the Residence and saw the additional damage and partial

repair work.  AP-ECF No. 119, ¶¶ 9, 11.  In April of 2018, there were visible water stains and strong moldy odors permeating the Residence.  AP-ECF No. 119, ¶ 10.

Shortly thereafter by complaint dated May 21, 2018, the plaintiff commenced the State Court Case against the Debtor.  The State Court complaint asserted seven claims including: a violation of the Connecticut Unfair Trade Practices Act, conversion, statutory theft, demand for an accounting, breach of fiduciary duty, negligence, and negligent infliction of emotional distress.  Prior to the entry of any judgment in the State Court Case, the Debtor filed his Chapter 7 bankruptcy petition.

At some point in 2018, Ms. Reyes retained the services of Todd Moler, owner and managing member of The Public's Adjuster, LLC - a private claim adjustment company representing insurance claim policyholders.  AP-ECF No. 120, ¶¶ 1-2.  On October 11, 2018, Mr. Moler inspected the Residence.  AP-ECF No. 120, ¶¶ 6-8.  At the time of his inspection, Mr. Moler considered the Residence uninhabitable due to the damage.  AP-ECF No. 120, ¶ 8.  He estimated the cost to clean-up and repair the Residence would total approximately $42,468.93.  AP-ECF No. 120, ¶ 11.

On September 29, 2020, Ms. Reyes sold the Residence to a third-party for $125,000.  AP-ECF No. 119, ¶ 1.  Ms. Reyes believes the Residence could have sold for $177,000 or more if it was not damaged.  AP-ECF No. 119, ¶ 20.

## IV.  **APPLICABLE LAW**

### *Standard for Motions for Default Judgment*

"If a plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk – on the plaintiff's request, with an affidavit showing the amount due – must enter judgment for that amount and costs against a defendant who has been

defaulted for not appearing."  Fed.R.Civ.P. 55(b)(1), made applicable to this adversary proceeding pursuant to Fed.R.Bankr.P. 7055.  When a plaintiff's claim is not for a sum certain, the plaintiff "must apply to the court for a default judgment" and satisfy the requirements of Fed.R.Civ.P. 55(b)(2).   Rule 54(c) of the Federal Rules of Civil Procedure, made applicable here pursuant to Fed.R.Bankr.P. 7054(a), limits default judgments to what is demanded in the pleadings.  *See*, Fed.R.Bankr.P. 7054, Fed.R.Civ.P. 54(c)("a default judgment must not differ in kind from, or exceed in amount, what is demand in the pleadings."); *see also, Belizaire v. RAV Investigative & Sec. Servs. Ltd.*, 61 F.Supp. 3d 336, 345–46 (S.D.N.Y. 2014)(interpreting narrowly "the Rule 54(c) requirement to turn on defendant's receipt of adequate notice of the scope of damages").

A court considering a default judgment may "conduct hearings or make referrals" in order to, among other things, "determine the amount of damages[,] establish the truth of any allegation by evidence[,] or investigate any other matter."   Fed.R.Civ.P. 55(b)(2)(B)-(D).  "[T]he court may ... enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true."  *Francisco Ayala De Jesus, Fredy Salustio Flores, individually and on behalf of others similarly situated, v. P&N Cuisine Inc., Nimnual Likituarin*, 20-CIV-3619 (RA), 2021 WL 2380065, at *2 (S.D.N.Y. June 10, 2021)(*citing, Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam)).  And, "while a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."  *Metro Found. Contractors Inc.*, 699 F.3d at 234 (internal quotation marks omitted); *see also, Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)("[A]

default is an admission of all well-pleaded allegations against the defaulting party.")
"There must be an evidentiary basis for the damages sought by plaintiff, and a [ ] court
may determine there is sufficient evidence either based upon evidence presented at a
hearing or upon a review of detailed affidavits and documentary evidence." *Metro Found.
Contractors Inc.*, 699 F.3d at 234 (*citing*, Fed. R. Civ. P. 55(b)(2)).

Despite a defendant's default, a plaintiff bears the burden to establish the
allegations made are true, and, any evidence provided must establish the defendant's
liability on each asserted cause of action. *See, City of New York v. Mickalis Pawn Shop,
LLC*, 645 F.3d 114, 137 (2d Cir. 2011).

The Second Circuit has noted "dispositions of motions for entries of defaults and
default judgments ... are left to the sound discretion of a district court." *BABY "A" ROE,
et al., v. CNTP MCB INC., 21 CIV. 468(CM)(GWG), 2021 WL 2258297, at *2 (S.D.N.Y.
June 3, 2021)* (*citing, Shah v. N.Y. State Dep't of Civil, Serv.*, 168 F.3d 610, 615 (2d Cir.
1999)). "Where, as here, the defaulting party is acting *pro se*, the Court 'must be
especially hesitant to enter a default judgment.'" *In re Keswani*, 20-10315-JLG, 2021 WL
1940802, at *4 (Bankr. S.D.N.Y. May 13, 2021)(internal citation omitted); s*ee also,
Goodrich v. WFS Financial, Inc.*, No. 06–CV–1435, 2008 WL 1805819, at *1 (N.D.N.Y.
Apr. 18, 2008)("a pro se litigant is held to a lesser standard in terms of satisfying
procedural rules, and hence, a default judgment should be used sparingly against these
parties.").

### *Dischargeability of Unliquidated Debt*

Rule 4007(a) of the Federal Rules of Bankruptcy Procedure allows a creditor to file
a complaint to obtain a determination of the dischargeability of any debt.  Fed.R.Bankr.P.

4007(a).  Pursuant to § 101(12), the term "debt" means liability on a claim.  11 U.S.C. § 101(12).  In turn, a "claim" is broadly defined in § 101(5) as a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.  11 U.S.C. § 101(5).  A "claim" may also include a cause of action or right to payment that has not yet accrued or become cognizable.  2-101 *Collier on Bankruptcy* ¶ 101.05 (16th).  A bankruptcy court may determine the dischargeability of an unliquidated debt, or, a cause of action, without liquidating the debt.  *See*, *In re Estrin*, AP 15-80039-DD, 2016 WL 691506, at *8 (Bankr. D.S.C. Feb. 19, 2016)("a showing of non-dischargeability does not require a court to determine the exact amount of or the extent of the debt."); *In re Stark*, 06-11966-B-7, 2007 WL 2505563, at *3 (Bankr. E.D. Cal. Aug. 31, 2007)("Even without the Judgment, this court has jurisdiction to determine the dischargeability of an unliquidated debt."); *First Fed. Sav. & Loan Ass'n of Rochester v. Kelley (In re Kelley)*, 163 B.R. 27, 33 (Bankr.E.D.N.Y.1993).  "It is axiomatic that in light of the debtor's ability to discharge the plaintiff's claim because it is contingent and unliquidated, regardless of whether a proof of claim is filed, it follows this plaintiff has standing to seek a declaration that this claim is nondischargeable." *In re Stone*, 90 B.R. 71, 73 (Bankr. S.D.N.Y. 1988), *aff'd*, 94 B.R. 298 (S.D.N.Y. 1988), *aff'd*, 880 F.2d 1318 (2d Cir. 1989)(*unpublished*); *In re Stone*, 94 B.R. 298, 303 (S.D.N.Y. 1988)("Appellant contends that appellee has no defined "debt" that can be the subject of a discharge complaint. … [W]e affirm [the bankruptcy court] decision on this question by adopting the articulate and persuasive reasoning set forth in [its] decision.").

A debtor's scheduling of a debt constitutes a sworn statement and admission against interest, which is strongly probative of the claim's validity. *In re Live Primary, LLC*, 626 B.R. 171, 189 (Bankr. S.D.N.Y. 2021); *In re Ridge Mt., LLC*, Docket No. 12-31090, 2012 Bankr. LEXIS 5882, at *34 (Bankr. N.D.N.Y. Dec. 21, 2012)("When offered against a debtor, a debtor's schedules may be treated as judicial admissions."); *In re Jorczak*, 314 B.R. 474, 483 (Bankr. D. Conn. 2004)("Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions.").

### Bankruptcy Code § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge those debts arising from "false pretenses, a false representation, or actual fraud."  11 U.S.C. § 523(a)(2)(A).  "Though the elements of each overlap, they are distinct."  *Heritage Equities, LLC v. Newman (In re Newman)*, 588 B.R. 281, 296 (Bankr. D. Conn. 2018); *see also*, *Wang v. Guo (In re Guo)*, 548 B.R. 396, 398 (Bankr. E.D.N.Y. 2016). "A creditor seeking to establish nondischargeability under § 523(a) must do so by the preponderance of the evidence." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006)(*citing, Grogan v. Garner*, 498 U.S. 279 (1991)).  In objections to dischargeability of particular debts, this burden effectuates the Bankruptcy Code's objective to provide "the debtor 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'" *Fleet Credit Card Servs. v. Macias (In re Macias)*, 324 B.R. 181, 187 (Bankr. E.D.N.Y. 2004) (*quoting Cazenovia Coll. v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86 (2d Cir. 2000)).

To establish a debt was incurred by "false pretenses" requires a plaintiff to establish "'(1) an implied misrepresentation or conduct by the defendant[ ]; (2) promoted knowingly and willingly by the defendant[ ]; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff[ ]; (4) which wrongfully induced the plaintiff[ ] to advance money, property, or credit to the defendant.'" *Wang*, 548 B.R. at 398 (*quoting, Voyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 396 (Bankr. E.D.N.Y 2005)).

To establish a debt was incurred by a "false representation" requires that a plaintiff establish, "(1) the defendant made a false or misleading statement; (2) with intent to deceive; (3) in order for the plaintiff to turn over money or property to the defendant." *Wang*, 548 B.R. at 398 (*quoting, Frishberg v. Janac (In re Janac)*, 407 B.R. 540, 552 (Bankr. S.D.N.Y 2009)).  Omissions of fact can qualify as false representations: "a false representation can be shown through either an express statement or through an omission where the circumstances are such that disclosure is necessary to correct what would otherwise be a false impression."  *In re Deutsch*, 575 B.R. 590, 599 (Bankr. S.D.N.Y. 2017)(internal citations omitted).

Section 523(a)(2)(A)'s use of the term "actual fraud," refers generally to common law fraud.  *Husky Int'l Elecs., Inc. v. Ritz*, 136 S.Ct. 1581, 1586 (2016).  "Although 'fraud' connotes deception or trickery generally, the term is difficult to define more precisely." *Husky Int'l*, 136 S.Ct. at 1585.  To establish a debt was incurred by "actual fraud" within the Second Circuit, a plaintiff must establish that "false representation, scienter, reliance, and harm" occurred.  *Evans v. Ottimo*, 469 F.3d 278, 283 (2d Cir. 2006).

### *Bankruptcy Code § 523(a)(2)(B)*

Pursuant to § 523(a)(2)(B), an individual debtor will not receive a discharge, "from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by — use of a statement in writing — (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable...reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive..." 11 U.S.C. § 523(a)(2)(B).

### *Bankruptcy Code § 523(a)(4)*

Bankruptcy Code § 523(a)(4) excepts from discharge debts arising from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). Fraud pursuant to § 523(a)(4), "has generally been interpreted as involving intentional deceit, rather than implied or constructive fraud." 4 *Collier on Bankruptcy* ¶ 523.10[1][b], 532-71 (16th). For purposes of § 523(a)(4), defalcation is the misappropriation or misuse of property or funds entrusted to a fiduciary. *In re Wizenberg*, 20-11616, 2021 WL 777142, at *5 (11th Cir. Mar. 1, 2021).

"Larceny" requires proof the Debtor engaged in a "fraudulent and wrongful taking and carrying away of" Ms. Reyes's funds "with intent to convert such property to the [Debtor's] use without the consent of [Ms. Reyes]." 4 *Collier on Bankruptcy* ¶ 523.10 (16th). To constitute larceny, "a defendant must possess the unlawful intent at the time of the original taking." *In re Daffner*, 612 B.R. 630, 652 (Bankr.E.D.N.Y. 2020).

Embezzlement, under § 523(a)(4), "is determined based on federal common law," *3N Int'l, Inc. v. Carrano (In re Carrano)*, 530 B.R. 540, 558 (Bankr.D.Conn. 2015), and has been defined repeatedly as "the fraudulent appropriation of property by a person to

whom such property has been entrusted, or into whose hands it has lawfully come." *Conn. Attorneys Title Insurance Co. v. Budnick (In re Budnick)*, 469 B.R. 158, 176 (Bankr.D.Conn. 2012).  "The Plaintiff must establish three elements to sustain a claim under § 523(a)(4) for embezzlement: (1) the debtor rightfully possessed another's property; (2) the debtor appropriated the property for use other than the use for which the property was entrusted; and (3) the circumstances implied a fraudulent intent."  *In re Daffner*, 612 B.R. at 651 (internal citations omitted).  Different than larceny, to constitute embezzlement, the original taking of the property must be lawful, or, with the consent of the owner.  4 *Collier on Bankruptcy* ¶ 523.10 (16th).

### *Bankruptcy Code § 523(a)(6)*

To prevail on a § 523(a)(6) claim, a plaintiff must show the debt arose from a "willful" and "malicious" act which caused personal injury or injury to the plaintiff's property.  Bankruptcy Code § 523(a)(6); *see also*, *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006).  The Supreme Court instructs that a nondischargeable debt under § 523(a)(6) requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."  *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).  The Supreme Court further cautions that exceptions to discharge under § 523(a)(6) should not be construed so broadly that even a "knowing breach of contract could also qualify." *Kawaauhau*, 523 U.S. at 62; *see also,* 4 *Collier on Bankruptcy* ¶ 523.12 ("Courts must be careful not to equate a breach of a contract, which happens to be a security agreement, with conduct causing willful and malicious injury.").  "[D]ebts arising from recklessly or negligently inflicted injuries" are outside the scope of § 523(a)(6)."  *Kawaauhau*, 523 U.S. at 64.

"The Second Circuit has held the word "willful" in this context means, "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Ball*, 451 F.3d at 69, *see also*, *In re Margulies*, 541 B.R. at 161–62 ("To prove that a debtor acted willfully under 11 U.S.C. § 523(a)(6), the plaintiff must demonstrate that the debtor deliberately intended to injure the plaintiff"). Willfulness "includes conduct that the actor is substantially certain will cause injury." *In re Mitchell*, 227 B.R. 45, 51 (Bankr.S.D.N.Y. 1998).

"Malicious" in this context means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Ball*, 451 F.3d at 69 (*citing, In re Stelluti*, 94 F.3d 84, 87 (2d Cir.1996)). "Malice may be implied by the acts and conduct of the debtor in the context of [the] surrounding circumstances." *Ball*, 451 F.3d at 69. "[A]ctual malice may be inferred or imputed, for example, from the fact that the debtor's conduct giving rise to liability has no potential for economic gain or other benefit to the debtor, from which one could only conclude that the debtor's motivation must have been to inflict harm upon the creditor." *In re Luppino*, 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998).

In some instances, a bankruptcy court may determine whether a debt is non-dischargeable even if it is unliquidated. I note this case is distinguishable from a recent decision in the Southern District of New York bankruptcy court named *Treasures London Ltd. v. Keswani (In re Keswani),* Case No. 20-10315-JLG, 20-01084, 2021 Bankr.LEXIS 1292, 2021 WL 1940802 (Bankr.S.D.N.Y May 2021). In *Keswani*, the bankruptcy court was faced with a state law cause of action to enforce a guaranty against the debtor and concluded there must be a determination a debtor is liable to plaintiffs on their claims

against the debtor before a debt can arise against the debtor.  In that case, there was no admission of liability in the debtor's schedules as there is here.  In light of a debtor's ability to discharge an unliquidated claim in a Chapter 7 case, it follows a plaintiff has the ability to seek a declaration its unliquidated claim is nondischargeable.  *See*, *In re Stone*, 90 B.R. 71, 73 (Bankr. S.D.N.Y. 1988), *aff'd*, 94 B.R. 298 (S.D.N.Y. 1988), *aff'd*, 880 F.2d 1318 (2d Cir. 1989)(unpublished).

## V.    DISCUSSION

The Debtor filed an answer to the Complaint but failed to otherwise participate in this litigation after the court vacated an early entry of default at his request.  Subsequent failures to comply with discovery obligations resulted in the entry of a second default. Now the plaintiff seeks entry of a default judgment, and the court is tasked with determining whether the Complaint's allegations state a claim upon which relief may be granted and whether the plaintiff has met her burden of proof.  Any relief must be limited to the relief sought in the Complaint pursuant to Rule 54(c).  Here, Ms. Reyes's Complaint requests a determination of whether certain state law causes of action are non-dischargeable under Bankruptcy Code §§ 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6).

For the reasons that follow, the record supports a conclusion the plaintiff has satisfied the required elements of § 523(a)(2)(A) and (a)(4), and, any cause of action resulting from the Debtor's pre-petition conduct regarding the plaintiff is excepted from his Chapter 7 discharge.

### *Plaintiff Prevails on § 523(a)(2)(A) Claim*

Ms. Reyes is entitled to a default judgment finding her claim for false pretenses and false representation is non-dischargeable pursuant to § 523(a)(2)(A) because she established the four factors for such a claim by a preponderance of the evidence.  The defendant's own admissions establish he promised he would represent Ms. Reyes in connection with the insurance claim and would monitor and protect the Residence.  *See*, AP-ECF No. 1, ¶¶ 11, 18; 38, ¶¶ 11, 18.  The Debtor also represented he could perform and coordinate the repair work while knowing he did not possess a home improvement contractor's license.  The combination of these representations created a contrived and misleading understanding of the transaction on the part of the plaintiff which wrongfully induced her to advance money, property, or credit to the defendant.

Ms. Reyes relied on these representations when she endorsed the insurance company checks and delivered them to the Debtor believing he could, and would, perform the home repair services.  The Debtor's conduct of accepting and cashing the checks created the false pretense he intended to repair the Residence.

"Though similar to a false pretense, a false representation differs in that it requires an explicit, definable statement resulting in a misrepresentation, while a false pretense is conduct that promotes or implies a misleading scheme."  *In re Hazan*, 1-15-41018-NHL, 2018 WL 4718976, at *6 (Bankr. E.D.N.Y. Sept. 28, 2018)(internal citations omitted).  Here, the facts established by the Complaint's well-pled allegations and Ms. Reyes's affidavit indicate the Debtor made a misleading statement when he promised to protect and repair the Residence deceiving Ms. Reyes to turn over the insurance proceeds to him for this purpose.  If his representation was not sufficient for purposes of §

523(a)(2)(A), there are additional facts that are sufficient including the Debtor's failure to inform Ms. Reyes that (1) he did not hold a home improvement contractor's license; and, (2) as a licensed public insurance adjuster for the damaged home he was not permitted to perform the home repair work himself. Accordingly, a default judgment shall enter in favor of Ms. Reyes finding any cause of action as a result of this false representation is non-dischargeable pursuant to § 523(a)(2)(A).

Because the court finds the Complaint allegations, the Debtor's admissions and the evidence presented in Ms. Reyes's affidavit sufficiently demonstrate the Debtor's conduct is non-dischargeable pursuant to § 523(a)(2)(A) for false pretenses and false representation, the court does not need to reach whether the conduct also constitutes fraud under that section.

### Ms. Reyes's § 523(a)(2)(B) Claim Fails

Ms. Reyes's claim pursuant to Bankruptcy Code § 523(a)(2)(B) fails because a written statement is a required element. There is no allegation or evidence suggesting the Debtor used a statement in writing with respect to his financial condition as part of the conduct alleged here. Any claim for non-dischargeability pursuant to Bankruptcy Code § 523(a)(2)(B) is denied.

### Ms. Reyes Prevails on § 523(a)(4) Claim for Embezzlement, Only

Ms. Reyes is entitled to a default judgment finding her claim is non-dischargeable under an embezzlement theory pursuant to Bankruptcy Code § 523(a)(4). The Complaint's allegations sufficiently plead that Ms. Reyes endorsed and provided the Debtor with $41,627.74 in insurance proceeds checks. The Debtor rightfully possessed those checks based upon his promise to perform repairs to the Residence. However, the

Debtor misappropriated these funds when he cashed the checks at a pawn and check cashing business, failed to complete the promised repairs, and failed to account for the funds. *See*, AP-ECF No. 119, ¶¶ 6, 17-18. These circumstances sufficiently imply a fraudulent intent for purposes of embezzlement. *See, In re Daffner*, 612 B.R. at 651. A default judgment will enter in favor of Ms. Reyes finding any cause of action accruing to her benefit as a result of the Debtor's conduct of embezzling the $41,627.74 of insurance proceeds is non-dischargeable pursuant to Bankruptcy Code § 523(a)(4).

However, any claim pursuant to Bankruptcy Code § 523(a)(4) for fraud or defalcation while acting in a fiduciary capacity or for larceny fails. The Complaint allegations are insufficient to support a finding the Debtor was acting in a fiduciary capacity. While the Debtor admitted Ms. Reyes engaged him to represent her in connection with the insurance claim, that in and of itself is not enough for this court to find a fiduciary capacity. *See, Thomas v. Biller Associates Tri-State, LLC*, CV054010695S, 2011 WL 4507207, at *9 (Conn. Super. Aug. 31, 2011)(The court could find no Connecticut case directly on point as to the public adjuster-insured relationship and analyzed the parties' contract and course of dealing to find a fiduciary relationship based upon adjuster exercising skills not available to insureds). Additionally, the harm alleged stems from the Debtor's failure to repair the Residence as promised while also converting funds intended for that purpose. The harm does not flow from the Debtor's conduct as Ms. Reyes's insurance adjuster.

As to larceny, the evidence and allegations indicate Ms. Reyes endorsed the checks to the Debtor and nothing suggests the Debtor's receipt of the checks was

unlawful at the time they were taken.   Therefore, the larceny and fraud or defalcation while acting as a fiduciary claims shall be denied.

### *Ms. Reyes's § 523(a)(6) Claim Fails*

Ms. Reyes's is not entitled to a default judgment for willful and malicious injury pursuant to § 523(a)(6).   "The Second Circuit has held the word "willful" … means, "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."   *Ball*, 451 F.3d at 69; *see also, In re Margulies*, 541 B.R. at 161–62 ("the plaintiff must demonstrate that the debtor deliberately intended to injure the plaintiff").   Here, there is insufficient support for a finding of willfulness.   The wrongful conduct involves the Debtor promising to repair the Residence when he was not licensed to do so and when such a promise violated his agreement to represent Ms. Reyes as an insurance adjuster, accepting the insurance claims proceeds, and converting them to his own benefit without making the promised repairs.   For purposes of § 523(a)(6), there is no evidence suggesting the Debtor acted intentionally to cause an injury.

There are also insufficient facts suggesting the Debtor acted with malice.   "[A]ctual malice may be inferred or imputed, for example, from the fact that the debtor's conduct giving rise to liability has no potential for economic gain or other benefit to the debtor, from which one could only conclude that the debtor's motivation must have been to inflict harm upon the creditor."   *In re Luppino*, 221 B.R. at 700.   Here, there are not enough facts to support a finding that the Debtor acted with the intent to cause harm to Ms. Reyes. The Supreme Court has cautioned courts to construe exceptions to discharge narrowly and not to equate a knowing breach of contract with a willful and malicious act.   *See*,

*Kawaauhau*, 523 U.S. at 62.  The court declines to conclude Ms. Reyes is entitled to a default judgment pursuant to § 523(a)(6).

## VI.   CONCLUSION

The plaintiff established by a preponderance of the evidence that the defendant's conduct described in the Complaint satisfies the elements of Bankruptcy Code §§ 523(a)(2)(A) and (a)(6).  Any damages owing to Ms. Reyes and flowing from Mr. Ranciato's conduct -- including his creation of a false pretense and false representation, and his embezzlement of insurance proceeds – will be non-dischargeable.

All other arguments made have been considered and determined to be without merit.

**This is a final order subject to rights of appeal.  The time within which a party may file an appeal of a final order or judgment of the bankruptcy court is fourteen (14) days after it is entered on the docket.  See, Fed.R.Bankr.P. 8002(a)(1).  This decision and the default judgment that will enter on the same date comprise a final order subject to traditional rights of appeal with a fourteen (14) day appeal period***.***  **See, Ritzen Grp., Inc. v. Jackson Masonry, LLC, 140 S.Ct. 582 (2020).**

**ACCORDINGLY, it is hereby**

**ORDERED**: The motion for default judgment, AP-ECF No. 118, is GRANTED in part and DENIED in part; and it is further

**ORDERED:**  A default judgment in favor of plaintiff Madeline Reyes f/k/a Madeline Walker pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6) and Fed.R.Civ.P. 55(b) shall enter as a separate document entered on the docket; and it is further

**ORDERED:**  The motion for default judgment, AP-ECF No. 118, seeking relief pursuant to 11 U.S.C. §§ 523(a)(2)(B) and (a)(4) is denied as moot in light of the relief granted pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). and it is further

**ORDERED:**  The Clerk shall close this adversary proceeding case.

Dated this 8th day of February, 2022, at New Haven, Connecticut.



Ann M. Nevins
Chief United States Bankruptcy Judge
District of Connecticut